IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| W.U. and L.U., individually and on behalf of their minor child, M.U.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>STATE OF HAWAIʻI, DEPARTMENT OF EDUCATION and CHRISTINE KISHIMOTO, in her individual capacity as Superintendent of the Hawaii Public Schools,<br><br>　　　　　Defendants. | CIVIL NO. 18-000197 JAO-RT<br><br>ORDER AFFIRMING HEARINGS OFFICER'S APRIL 25, 2018 DECISION |

# **ORDER AFFIRMING HEARINGS OFFICER'S APRIL 25, 2018 DECISION**

## INTRODUCTION

This appeal, brought by Plaintiffs W.U. and L.U., individually and on behalf of their minor child, M.U. (collectively "Plaintiffs") against the State of Hawaiʻi, Department of Education and Christine Kishimoto (collectively "Defendants"), seeks reversal of the Findings of Fact, Conclusions of Law, and Decision ("Decision") issued on April 25, 2018 in DOE-SY1718-030. After careful consideration of the parties' briefs, the arguments of counsel, the applicable law, and the Administrative Record ("AR"), the Court HEREBY AFFIRMS the Decision for the reasons set forth below.

BACKGROUND

A. Factual History

Thirteen year-old M.U. has been diagnosed with Dyslexia and Dyscalculia. AR, Doc. No. 13-9 at 4.[1]  She is eligible for services under the Individuals with Disabilities Education Act ("IDEA") by meeting criteria for a Specific Learning Disability. *Id.*

For the 2016-2017 and 2017-2018 school years, M.U. attended Assets, a private program. AR, Doc. No. 16 at 17:7-12. Prior to that, M.U. attended Noelani Elementary School ("Noelani"). *Id.* at 17:13-15. During the 2016-2017 school year, the Department of Education ("DOE") determined that M.U.'s needs could be met at Stevenson Middle School ("Stevenson"), a DOE public school campus. AR, Doc. No. 15 at 46-52.

On January 24, 2017, DOE staff contacted W.U. and L.U. to schedule M.U.'s annual individualized education program ("IEP") meeting. *Id.* at 53. The parties agreed to conduct the meeting on February 9, 2017. *Id.* Prior to this meeting, two special education teachers from Stevenson, along with the Principal and student services coordinator, observed M.U. in various settings at Assets. *Id.*

---

[1] Pinpoint citations to the Decision reference the Decision's page numbers. The Court likewise refers to the transcripts by the page numbers on the transcripts themselves. The CM/ECF page numbers are referenced for other portions of the AR.

at 34. Their observations were discussed with W.U. and L.U. at the IEP meeting and included in the Present Levels of Educational Performance section of M.U.'s IEP. *Id.*

At the time the DOE formulated M.U.'s IEP, she was in her first year at Assets; therefore, Defendants lacked data to ascertain whether to increase or reduce M.U.'s extended school year ("ESY") services.[2] AR, Doc. No. 16 at 168:7-12. Insofar as Assets did not express concern about M.U. regressing during school breaks, *id.* at 170:21-171:15, Defendants determined that it was in M.U.'s best interest to maintain the status quo: Defendants would provide ESY services during summer break and after a break of 14 days. *Id.* at 169:3-17. The February 9, 2017 IEP noted that M.U. met the standard for an ESY and that she would receive four hours per day of special education ESY by the fifteenth calendar day after a break of fourteen consecutive calendar days and the ESY would end fourteen calendar days prior to the commencement of the regular school year. AR, Doc. No. 15 at 42.

During the February 9, 2017 IEP meeting, W.U. and L.U. actively discussed and inquired about ESY services. AR, Doc. No. 13-9 at 12. They did not express concerns about the ESY determination or placement. AR, Doc. No. 16 at 59:6-24.

---

[2] Defendants also lacked data because even though M.U.'s IEP provided for ESY services when she was at Noelani, she did not attend ESY for two summers. AR, Doc. No. 16 at 126:7-21.

In fact, L.U. confirmed that M.U.'s ESY program would begin at Stevenson at the end of July. *Id.*, Doc. No. 15. Following the IEP meeting, W.U. discussed the ESY placement with M.U., who refused to attend the special education classes. *Id.*, Doc. No. 16 at 59:18-23. This fact was unknown to the DOE. *Id.* at 59:24-60:18.

By letter dated May 8, 2017, the DOE informed W.U. and L.U. that ESY services at Stevenson would run from June 9, 2017 to July 24, 2017 from 8:00 a.m. to 12:00 p.m. *Id.*, Doc. No. 15 at 61. The DOE sent a follow-up letter on May 31, 2018, reiterating the details regarding ESY services and requesting that it be notified whether M.U. would be attending the ESY programming that summer. *Id.* at 62. In an email dated June 1, 2017, W.U. informed the DOE that M.U. had other arrangements for the summer, but that he wished to keep open the ESY option for the future. *Id.* at 63.

Months after the IEP meeting, W.U. and L.U. sent Stevenson's Principal a letter dated June 20, 2017, notifying her that they rejected M.U.'s February 9, 2017 IEP for failure to provide appropriate placement or services. *Id.* at 64. They explained that they intended to send M.U. to Assets for the 2017-2018 school year and would be seeking public reimbursement. *Id.* Stevenson confirmed receipt of W.U. and L.U.'s notification regarding M.U.'s unilateral placement at Assets in a

letter dated June 30, 2017, and advised that it remained committed to working with them to develop an appropriate program for M.U. *Id.* at 65.

B. Procedural History

On February 9, 2018, Plaintiffs filed a Request for Impartial Due Process Hearing ("Request") with the Office of Dispute Resolution Department of the Attorney General, State of Hawaiʻi. AR, Doc. No. 13-1. In pertinent part, Plaintiffs requested a determination as to whether the IEP meeting allowed for sufficient discussion of M.U.'s individualized needs during the ESY program and whether those needs would be properly addressed. *Id.* at 4. Plaintiffs also sought a determination as to whether M.U.'s ESY least restrictive environment was discussed at the IEP meeting and/or described in the IEP. *Id.*

Hearings Officer Jennifer M. Young ("Hearings Officer") conducted the due process hearing on March 28 and 29, 2018. AR, Doc. No. 13-9 at 3. On April 25, 2018, the Hearings Officer issued the Decision. *Id.* She held that: (1) M.U.'s February 2, 2017[3] IEP placed her in the least restrictive environment; (2) at M.U.'s February 9, 2017 IEP meeting, the IEP team's discussion of M.U.'s least restrictive environment was properly addressed; (3) M.U.'s ESY least restrictive environment

---

[3] It appears that this is a typographical error and should read February 9, 2017.

5

was properly described in her February 3, 2017[4] IEP; (4) M.U.'s least restrictive environment during her ESY program was properly discussed during the February 9, 2017 IEP meeting;[5] (5) the discussion regarding M.U.'s need for socialization during ESY was sufficient; (6) the discussion concerning the manner in which the DOE would address M.U.'s socialization needs during her ESY was sufficient; and (7) the DOE had sufficient information and assessments from M.U.'s private school to determine the least restrictive environment and placement, but the DOE lacked sufficient data to determine the number of days before M.U. required ESY services. *Id.* at 22-31.

With respect to ESY services, the Hearings Officer concluded that due to the DOE's failure to obtain sufficient information to establish the proper ESY program for M.U. for the summer of 2017, it failed to offer M.U. a free appropriate public education ("FAPE"). AR, Doc. No. 13-9 at 35. The Hearings Officer ultimately determined that

> Student did not attend a private ESY program during the summer of 2017 and equitable considerations do not warrant

---

[4] It appears that this is a typographical error and should read February 9, 2017.

[5] The issue no. 4 heading in the Decision appears to erroneously reference the February 3, 2017 IEP instead of the February 9, 2017 IEP meeting. *Compare* AR, Doc. No. 13-9 at 29 ("Issue 4: Student's Least Restrictive Environment during Extended School Year Program was properly discussed in the February 3, 2017 IEP") *with id.* at 4 (identifying issue no. 4 as "Whether Student's [least restrictive environment] during her ESY program was properly discussed during Student's February 9, 2017, IEP meeting").

6

> reimbursement as Parents did not avail Student for ESY programming. **Therefore, tuition reimbursement is not required in this matter and Petitioner did not produce sufficient evidence regarding compensatory education.**

*Id.* at 37.

On May 24, 2018, Plaintiffs commenced the instant action.

## STANDARD OF REVIEW

The IDEA provides that a court, in reviewing a due process hearing, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982). Instead, the Court must give "due weight" to the administrative proceedings. *Id.*; *L.M. v. Capistrano Unified Sch. Distr.*, 556 F.3d 900, 908 (9th Cir. 2009).

The Court must therefore carefully consider the agency's findings and "endeavor to respond to the hearing officer's resolution of each material issue." *L.M.*, 556 F.3d at 908 (citation and quotations omitted). Moreover, the Court may not simply ignore the administrative findings even though it may independently

7

determine how much weight to give to the same. *Id.* Greater deference is accorded to "thorough and careful" administrative agency findings. *Id.* (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)). The Court is to give deference to a hearings officer's decision "when it 'evinces his [or her] careful, impartial consideration of all the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented.'" *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438-39 (9th Cir. 2010) (quoting *Cty. of San Diego v. Cal. Special Educ. Hrg. Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996)) (quotations omitted) (alterations in original).

The burden of proof in IDEA appeals rests with the party challenging the administrative decision. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007)

## DISCUSSION

In essence, Plaintiffs seek remand for the Hearings Officer to determine, employing the "proper" standard, whether the denial of a FAPE as to the 2017 ESY program entitles them to reimbursement for M.U.'s private school tuition for the entire 2017-2018 school year. Plaintiffs argue that because the Hearings Officer erroneously believed that she was bound by Second Circuit precedent, she mistakenly concluded that she could not consider any remedy except reimbursement for an alternative ESY program, which caused her to restrict her

8

inquiry to whether Defendants provided an alternative placement for the ESY period. Plaintiffs do not challenge any other aspect of the Decision, nor do they provide any authority supporting the outcome they desire—reimbursement for private placement during the 2017-2018 school year for a denial of FAPE based only on the 2017 ESY program.

As an initial matter, the Court examined the record below and concludes that the Hearings Officer's findings were thorough and careful and so affords greater deference to the findings.

A. <u>Reimbursement under the IDEA</u>

The IDEA and its implementing regulations allow for reimbursement if the educating agency fails to offer a FAPE to children with disabilities:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the State standards that apply to education provided by the [state and local educational agencies].

34 C.F.R. § 300.148(c); 20 U.S.C. § 1412(a)(10)(C)(ii). However, reimbursement is limited:

> (d) Limitation on reimbursement. The cost of reimbursement described in paragraph (c) of this section may be reduced or denied—
>
> > (1) If—
> >
> > (i) At the most recent IEP Team meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide FAPE to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
> >
> > (ii) At least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in paragraph (d)(1)(i) of this section;
> >
> > (2) If, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in § 300.503(a)(1), of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for the evaluation; or
> >
> > (3) Upon a judicial finding of unreasonableness with respect to actions taken by the parents.

34 C.F.R. § 300.148(d); 20 U.S.C. § 1412(a)(10)(C)(iii).

These provisions "authorize[] reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special education or related services through the public school." *Forest*

*Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009). The Supreme Court has long held that parents who "'unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk,'" *Id.* (citations and quotations omitted). Parents "are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act." *Id.* (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)). The Ninth Circuit employs the following standard in determining what constitutes "proper" placement within the meaning of the IDEA:

> To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

*C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (citation and emphasis omitted).

"[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'" *Carter*, 510 U.S. at 15-16 (citation omitted); 20 U.S.C. §1415(i)(2)(C)(iii). Section 1415 confers broad discretion upon a court to fashion relief based on equitable considerations. *Carter*, 510 U.S. at 16 (quoting *Sch. Comm. of Burlington v. Dep't*

*of Educ. of Mass.*, 471 U.S. 359, 369, 374 (1985)).  Even in cases where a court concludes that a school district failed to provide a FAPE and private placement was proper, it "retain[s] discretion to reduce the amount of a reimbursement award if the equities so warrant—for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school." *Forest Grove*, 557 U.S. at 247.  Courts "must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is warranted." *Id.*; *Carter*, 510 U.S. at 16 ("Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required.  Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable.").

B. <u>Plaintiffs' Failure to Establish Proper Placement</u>

As explained above, the Court is authorized to grant relief it deems appropriate once it concludes that the public placement violated the IDEA.  *Carter*, 510 U.S. at 15-16 (citation omitted); 20 U.S.C. §1415(i)(2)(C)(iii).  Plaintiffs are entitled to reimbursement only if public placement violated the IDEA *and* the private school placement was proper.  *Forest Grove*, 557 U.S. at 247.

Significantly, Plaintiffs have failed to satisfy the second requirement for reimbursement: they have not provided any information concerning private school placement for M.U. *during the 2017 ESY period*. To establish "proper" placement, Plaintiffs must "demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *C.B*, 635 F.3d at 1159. In their June 1, 2017 email to Stevenson staff, W.U. and L.U. merely stated that they had "other arrangements" for M.U. during the summer. AR, Doc. No. 15 at 63. W.U. testified at the due process hearing that M.U. was tutored at home during the summer of 2017 because financial constraints precluded them from enrolling her with a specific type of tutor. *Id.*, Doc. No. 16 at 60:19-61:3. By W.U.'s own admission, M.U. did not attend private school during the 2017 ESY period. Therefore, Plaintiffs failed to meet the requirements for entitlement to reimbursement and the Hearings Officer correctly refused reimbursement. *See C.B.*, 635 F.3d at 1159.

The Hearings Officer articulated and applied the proper test. Having determined that the DOE failed to offer M.U. a FAPE due to insufficient information to establish the proper ESY program, she then considered whether M.U. attended an appropriate private placement. Doc. No. 13-9 at 35-36. Insofar as M.U. did not attend any private placement during the ESY period, and Plaintiffs

failed to avail M.U. of ESY programming, the Hearings Officer appropriately concluded that reimbursement was not warranted. *Id.* at 37.

C. Equitable Considerations

Even assuming the Court found that M.U. was denied a FAPE during the regular 2017-2018 school year *and* that placement at Assets was proper for the 2017-2018 school year, the equities would not support Plaintiffs' entitlement to full tuition reimbursement.[6] *Id.* ("If both criteria are satisfied, the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate."). Exercising its broad discretion to fashion relief based on equitable considerations, the Court finds that multiple factors would disfavor reimbursement.

Besides the inequity of awarding Plaintiffs tuition when M.U. did not attend a private program during the ESY period, Plaintiffs should not obtain a tuition windfall for an entire school year given the limited duration of the ESY program and because Plaintiffs have not contested the Hearings Officer's determinations regarding the regular school year provisions in the IEP. Additionally, not only did Plaintiffs reject the ESY program based in part on M.U.'s refusal to attend special

---

[6] The record is devoid of any evidence about the propriety of M.U.'s placement at Assets. Moreover, W.U. possesses invoices for payments to Assets, but he did not provide them during the administrative proceedings. *Id.*, Doc. No. 16 at 45:20-47:6.

education classes, AR, Doc. No. 16 at 59:18-23, they did not raise their concerns with Defendants. Instead, on June 1, 2017, they informed Stevenson that M.U. had other arrangements for the summer and on June 20, 2017, they rejected the IEP and stated their intention to send M.U. to Assets and seek public reimbursement. *Id.*, Doc. No. 15 at 63-64. Reimbursement may be reduced or denied where, as here, W.U. and L.U. did not inform the IEP team at the IEP meeting that they rejected the ESY placement and intended to enroll M.U. at Assets. *See* 34 C.F.R. § 300.148(d)(1)(i); 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa); *Forest Grove*, 557 U.S. at 247 (holding that it is within the court's "discretion to reduce the amount of a reimbursement award if the equities so warrant").

D. The Import of *T.M. ex rel. A.M. v. Cornwall Central School District*

Finally, the Court finds that the Hearings Officer did not improperly rely on Second Circuit authority in determining whether Plaintiffs should be reimbursed.[7] In declining to award reimbursement, the Hearings Officer reasoned that

> Although[] Student in this matter was provided ESY in her [least restrictive environment], the above provides a framework for reimbursement, which requires a student to attend an appropriate private alternative placement and prove equitable considerations that favor reimbursement. Here, Student did not attend any private placement during the timeframe of Extended School Year programming, and Parent's [sic] failed to avail Student for Extended School Year Programming.

---

[7] There is nothing in the record indicating that the Hearings Officer thought she was bound by Second Circuit precedent.

AR, Doc. No. 13-9 at 36.  While the Hearings Officer cited *T.M. ex rel. A.M. v. Cornwall Central School District*, 752 F.3d 145 (2d Cir. 2014), the general legal principles and standard she applied originate from Supreme Court cases, some of which Plaintiffs themselves relied upon in their Brief.

The *T.M.* decision, while lacking precedential effect, is instructive.  The Second Circuit explained that "even if a school district fails to place a disabled student in an ESY program in his [least restrictive environment], the student still will not be entitled to reimbursement unless he finds a private alternative ESY placement, proves that alternative placement was appropriate, and proves that equitable considerations favor reimbursement."  *T.M.*, 752 F.3d at 167 (citing *Carter*, 510 U.S. at 15-16; *Burlington*, 471 U.S. at 369-71).  This is the same test articulated by the Supreme Court and the Ninth Circuit.  *Forest Grove*, 557 U.S. at 247; *C.B*, 635 F.3d at 1159 ("A parent or guardian is 'entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the [IDEA].' . . . If either criterion is not met, the parent or guardian may not obtain reimbursement. . . . If both criteria are satisfied, the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate.").

The *T.M.* court further held that a reimbursement award need not include tuition for the entire year covered by the subject IEP if a violation affected only the ESY program. *T.M.*, 752 F.3d at 168. In such an instance, "it might be appropriate to award [] tuition reimbursement only for that period." *Id.* This provides guidance as to how a court might factor equitable considerations in awarding reimbursement under the circumstances presented here: that is, equities might favor limiting reimbursement to the ESY program when only the ESY period—and not the regular school year—is at issue. It was reasonable and prudent under the circumstances for the Hearings Officer to focus the inquiry on M.U.'s placement during the 2017 ESY period, as opposed to the 2017-2018 regular school year. Therefore, the Court AFFIRMS the Decision.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY AFFIRMS the Hearings Officer's April 25, 2018 Decision.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 12, 2019.

Jill A. Otake
United States District Judge

CIVIL NO. 18-00197 JAO-RT; *W.U., et al, v. Dep't of Educ., et al.*; ORDER AFFIRMING HEARINGS OFFICER'S APRIL 25, 2018 DECISION